## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ERICA DUNN, | |
| Plaintiff, | |
| v. | Case No. 16-cv-08691 |
| CHICAGO TRANSIT AUTHORITY, a municipal corporation, | Judge Martha M. Pacold |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Erica Dunn sued her employer, the Chicago Transit Authority (CTA), alleging race discrimination (Count 1), gender discrimination (Count 3), religious discrimination (Count 5) and retaliation (Counts 2, 4, and 6) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Now before the court is CTA's motion for summary judgment on all claims [84]. For the following reasons, the motion is granted.

## Background

In deciding CTA's motion for summary judgment, the court views the evidence in the light most favorable to Dunn, the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The following facts are undisputed unless otherwise noted. Dunn, a black Muslim female, has worked full time as a bus servicer for CTA since 2013. DSOF, [85] ¶¶ 3, 12.[1] Dunn's duties as a bus servicer included fueling, sweeping, and maintaining the interior and exterior of the buses. [85] ¶¶ 8–9. From April 2015 to March 2016, Dunn worked an overnight shift from 11:00 p.m. to 7:30 a.m. at the 74th Street garage. [85] ¶ 7.

---

[1] Bracketed numbers refer to docket entries and are followed by the page and paragraph number, as appropriate. Page number citations refer to the CM/ECF page number. Citations to the parties' Local Rule 56.1 Statements of Fact are identified as follows: "DSOF" for CTA's Statement of Facts [85], "PSOF" for Dunn's Statement of Facts [87], "Pl.'s Resp. DSOF" for Dunn's response to the CTA's Statement of Facts [87], and "Def.'s Resp. PSOF" for CTA's response to Dunn's Statement of Facts [90].

Beginning on April 30, 2015, a series of workplace incidents occurred that ultimately led Dunn to bring suit.

First, on April 30, 2015, Dunn received "duties of scheduling" during the spring "pick." [85] ¶ 28. Picks are job assignments for union bus schedulers; they are based on seniority and rotate every six months. [85] ¶ 27. Dunn's pick duties involved assisting with scheduling as a "runner" while the main scheduler was on vacation. [85] ¶ 32. Dunn testified that in May of 2015, her manager Chuck Posejpal did not allow her to fulfill these duties. [85] ¶ 34. Instead, Posejpal told her to return to the pumps, her previous assignment. [85] ¶ 35. During this period, Posejpal assigned Michael Stack, a white male, to perform the stand-in runner duties. [85] ¶¶ 60, 62. Stack was a "pool" bus servicer, meaning he filled in for unavailable bus servicers. [85] ¶ 59.[2] Stack had prior experience with scheduling. [85] ¶ 61.

Around May 2015, another incident involving Posejpal occurred. According to Dunn, Posejpal provided Dunn with incomplete instructions for her assignment to drop off and pick up a bus. [85] ¶ 21. After Dunn dropped off the bus, Posejpal called her and told her she took the wrong bus. [85] ¶ 22. This culminated in a meeting between Dunn, Posejpal, and manager Chuck Phillips. [85] ¶ 22. During the meeting, Phillips yelled at Dunn, beat on the table, called her a "liar," and repeatedly said the phrase "if you are ignorant" while reading from the CTA rule book. [85] ¶ 22.

There were several other incidents with her coworkers, including the following: David Miller yelled that Dunn took his bus, [85] ¶ 44, and LaDonna Douglas called Dunn "b*****s" for no reason, [85] ¶ 46. Additionally, one of Dunn's managers, Corrie Chatman, once "jumped out" at Dunn, [85] ¶ 45, and a mechanic, Dave Shanley, once rode Dunn's bumper when she was leaving the garage, [85] ¶ 43.

Dunn also testified that Posejpal would disrupt her prayers in the lunchroom. [85] ¶ 40. On at least one occasion, Posejpal banged on the glass and kicked garbage cans while Dunn was praying in the cafeteria. [85] ¶ 67; [85-2] at 45–46.

In early June 2015, Posejpal told Dunn he would no longer allow her to swap days with Carl Jones, another bus servicer. [85] ¶ 64. Posejpal also denied Dunn's requests for help with her duties. [85-2] at 47.

---

[2] Dunn attempts to dispute this characterization, but she does not cite any facts in the record to the contrary. [88] ¶ 59. She cites testimony from senior maintenance manager Pete Naegele that "Pool servicer duties are various as assigned, as needed. They work various hours, various days off, and various assigned," which appears fully consistent with the above description of a "pool" servicer's job. *See* [85-3] at 151.

Around this time, Dunn filed an internal "report to manager" to senior maintenance manager Pete Naegele regarding the behavior of Posejpal and Phillips. [85-4] at 87. Dunn also filed a complaint with CTA's internal EEO unit. [85-4] at 115. On July 29, the EEO unit completed its investigation of Dunn's complaint. In a letter to Dunn, the Unit explained that it found evidence supporting Dunn's concerns about Phillips's "communication style," but could not conclude that his conduct was related to a protected status. [85] ¶ 73. Accordingly, there was insufficient evidence to conclude that Phillips violated CTA's EEO policy. [85] ¶ 73. The EEO letter did not address any allegations about Posejpal. [85-4] at 115.

On August 28, 2015, Dunn filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). [85] ¶ 15. In her EEOC charge, Dunn alleged race and gender discrimination, retaliation for engaging in protected activity, and "different terms and conditions of employment." [85] ¶ 16. The charge did not allege religious discrimination. The parties agree that the investigation file does not include "any indication that Plaintiff alleged religious discrimination during the course of the EEOC investigation or that the EEOC took it upon itself to investigate religious discrimination against Plaintiff." [85] ¶ 17; Pl.'s Resp. DSOF, [87] ¶ 17. In early June 2016, the EEOC completed its investigation and issued a right to sue letter. [85-3] at 7.

On June 25, 2016, Dunn filed another internal report to manager with Naegele. *See* [85-4] at 107–11. Naegele forwarded the report to CTA's internal EEO Unit. [85] ¶ 71. CTA's EEO Unit closed its investigation because it was unable to reach Dunn. *See* [85-4] at 113.

In September 2016, Dunn brought this action. [1]. Her amended complaint alleged race discrimination and retaliation under Title VII and 42 U.S.C. § 1981, gender discrimination and retaliation under Title VII, and religious discrimination and retaliation under Title VII. [37]. CTA moved to dismiss. The court dismissed the Section 1981 claims with prejudice but held that Dunn stated Title VII discrimination and retaliation claims based on her race, gender, and religion. [59]. CTA filed the current motion for summary judgment. [84]. The case was reassigned to this judge.

## Discussion

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.*

3

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex*, 477 U.S. at 323 (1986). After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted). Construing the evidence and facts supported by the record in favor of the non-moving party, the court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [the non-moving party's] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

## I. Local Rule 56.1 Compliance

Local Rule 56.1[3] requires that the parties' summary judgment briefs cite to "the parties' Local Rule 56.1 statements and responses" and prohibits the parties from "cit[ing] to raw records materials." *Mervyn v. Nelson Westerberg, Inc.*, 76 F. Supp. 3d 715, 719 (N.D. Ill. 2014). The requirements of Local Rule 56.1 "are not mere formalities," and district courts are entitled to "strictly enforce" them. *Zuppardi v. Wal–Mart Stores, Inc.*, 770 F.3d 644, 648 (7th Cir. 2014); *see also Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015) ("This Court has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1.").

Dunn's opposition brief [89] violates Local Rule 56.1 by almost exclusively citing the record directly and not the parties' Local Rule 56.1 statements of fact. *See* [89] at 5–18. "Especially where (as here) arguments presented in a summary judgment motion are fact-intensive, it is essential to the court's proper consideration of those arguments for the parties to brief their legal and factual positions with reference to the Local Rule 56.1 statements and responses and not to the raw record; the value of the parties' Local Rule 56.1 statements and responses is largely lost if those materials are not cited in the briefs." *Mervyn*, 76 F. Supp. 3d at 720.

To enforce Rule 56.1, the court could decline to accept the factual propositions in Dunn's brief that improperly cite the record and not the statements of fact. *See Mervyn*, 76 F. Supp. 3d at 720. Exercising its discretion, the court will consider the facts set forth in Dunn's brief so long as they are supported by citation to either the record or one of the parties' statements of fact. The court will not, however, take into consideration facts that may be in the record that are not cited in Dunn's brief or her statements of fact. *See Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016)

---

[3] Local Rule 56.1 was amended on February 18, 2021. The court applies the version in effect at the time the parties' summary judgment briefs were filed.

(courts are not obligated "to scour the record looking for factual disputes" (internal quotation marks omitted)).

Moreover, while Dunn's brief incorporates her entire statements of facts by reference, [89] at 2, Dunn also must develop the arguments in her brief. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived . . ."). Thus, for any given argument, the court will consider the facts cited in Dunn's brief as the basis for that argument, but will not construct other arguments.

## II.    Exhaustion

CTA argues that Dunn failed to exhaust her administrative remedies as to her religious discrimination claim. "As a precondition to filing claims under Title VII," Dunn had to "file a charge with the EEOC." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 831 (7th Cir. 2015) (citing *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 634 (7th Cir. 2013)). "A plaintiff suing under Title VII may pursue a claim not explicitly included in an EEOC complaint only if her allegations fall within the scope of the earlier charges contained in the EEOC complaint." *Sommerfield v. City of Chicago*, 863 F.3d 645, 648 (7th Cir. 2017) (citation and internal quotation marks omitted).

In her EEOC charge, Dunn alleged race and gender discrimination, retaliation for engaging in protected activity, and "different terms and conditions of employment." [85] ¶ 16. The charge did not allege religious discrimination. Because Dunn did not explicitly include her religious discrimination claim in her EEOC complaint, she must show (or more precisely, show a genuine dispute of material fact) that it was within the scope of her other claims.

Claims fall within the scope of an EEOC complaint if they are "like or reasonably related to those contained in the EEOC complaint." *Sommerfield*, 863 F.3d at 648 (citation omitted). If they are, the court must ask "whether the current claim reasonably could have developed from the EEOC's investigation of the charges before it." *Id.* (citation omitted). Dunn argues that her religious discrimination claim "falls under the same law as her other claims (Title VII)." [89] at 10. But she must show more than that. "Claims are 'reasonably related' when there is a factual relationship between them," in other words, when they "describe the same conduct and implicate the same individuals." *Sommerfield*, 863 F.3d at 648 (citation and internal quotation marks omitted).

Dunn argues without factual support that she made this showing "through her own deposition testimony." [89] at 10. This argument is not persuasive in the absence of citation to any "specific facts" in the record to support the argument. *Anderson*, 477 U.S. at 250.

Dunn also points to her "Report to Manager on June 26, 2016." *See* [89] at 10. Dunn's June 2016 report (distinct from the 2015 report) does allege discrimination "because of [her] religious practice (Islam)." [85-4] at 101. CTA's EEO Unit subsequently acknowledged that this report included "allegations of discrimination on the basis of religion and sex." [85-4] at 113. However, Dunn does not argue that this report was provided to the EEOC, which completed its investigation on June 9, 2016, weeks *before* Dunn wrote this report. [85-3] at 5, 7. And Dunn concedes that the EEOC investigation file does not include "any indication that Plaintiff alleged religious discrimination during the course of the EEOC investigation or that the EEOC took it upon itself to investigate religious discrimination against Plaintiff." [85] ¶ 17; [87] ¶ 17.

Dunn points to no facts that could support a finding that her religious discrimination claim would have developed from the EEOC's investigation into her other discrimination claims. Accordingly, Dunn cannot show a genuine dispute of material fact that her religious discrimination claim (Count 5) was exhausted and the court grants summary judgment on it for that reason. The court does not reach the parties' arguments on the merits.

## III. Discrimination

The court now turns to Dunn's race and sex discrimination claims. Title VII makes it unlawful for an employer to "discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To succeed on a Title VII claim, Dunn must prove three elements: (1) she is a member of a protected class; (2) she "has been the subject of some form of adverse employment action (or . . . has been subjected to a hostile work environment)"; and (3) CTA took this adverse action on account of Dunn's membership in the protected class. *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018) (quoting *Morgan v. SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013)). To survive summary judgment, she must present evidence that, taken as a whole, "would permit a reasonable factfinder to conclude that [her race or sex] caused the discharge or other adverse employment action." *Abrego*, 907 F.3d at 1012 (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).

In this case, both parties rely on the burden-shifting approach articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which is "a means of organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases," *Abrego*, 907 F.3d at 1012 (quoting *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017)). Accordingly, while that approach is "not the only way to assess circumstantial evidence of discrimination," *Abrego*, 907 F.3d at 1012 (quoting *David*, 846 F3d at 224), the court also uses this framework to analyze Dunn's discrimination claims. To establish a prima facie case of discrimination under this approach, Dunn must show that (1) she is a member of a protected class; (2) her job

performance met CTA's legitimate expectations; (3) she suffered an adverse employment action; and (4) CTA treated another similarly situated employee who was not a member of the protected class more favorably. *See LaRiviere v. Board of Trustees of Southern Ill. Univ.*, 926 F.3d 356, 360 (7th Cir. 2019). If Dunn can establish a prima facie case, then the burden shifts to CTA to provide a legitimate, nondiscriminatory reason for the adverse action. *See McDonnell Douglas*, 411 U.S. at 802; *Coleman v. Donahue*, 667 F.3d 835, 845 (7th Cir. 2012). If CTA does so, then the burden shifts back to Dunn, "who must present evidence that the stated reason is a 'pretext,' which in turn permits an inference of unlawful discrimination." *Coleman*, 667 F.3d at 845.

## A. Adverse Employment Action

CTA first argues that Dunn cannot establish a prima facie case of discrimination because she has not suffered an adverse employment action. For purposes of Dunn's discrimination claims, a materially adverse employment action is an action that involves "a significant change in employment status," *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) (quoting *Andrews v. CBOCS W., Inc.*, 743 F.3d 230, 235 (7th Cir. 2014)), and is "more disruptive than a mere inconvenience or an alteration of job responsibilities," *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007) (quoting *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004)).

In arguing she suffered an adverse action, Dunn relies on *Herrnreiter v. Chicago Housing Authority*, 315 F.3d 742 (7th Cir. 2002). There, the Seventh Circuit discussed several categories of potentially adverse employment actions. In particular, Dunn argues that she experienced "humiliating, degrading, or . . . otherwise significantly negative" alterations in her workplace environment. *Id.* at 744. In this category are alterations "that can fairly be characterized as objectively creating a hardship, the classic case being that of the employee whose desk is moved into a closet," as well as "harassment—mistreatment of an employee by coworkers or supervisors that is sufficiently severe to worsen substantially his conditions of employment as they would be perceived by a reasonable person in the position of the employee." *Id.* at 744–45.

To support this argument, Dunn points to several facts in the record. First, she argues her scheduling duties were "routinely" given to Michael Stack. But as CTA points out, Dunn only testified that Stack was given scheduling duties during a single six-week interval while the lead scheduler was on vacation. [85] ¶ 62. Dunn "picked" the scheduling duties according to union procedure, and those duties were reassigned to another employee against her will. [85] ¶¶ 28, 35. However, "[a] transfer involving no reduction in pay and no more than a minor change in working conditions" is not a materially adverse employment action. *Madlock v. WEC Energy Grp., Inc.*, 885 F.3d 465, 470 (7th Cir. 2018) (quoting *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996)). And a plaintiff's "perception that a

lateral transfer would be personally humiliating is insufficient, absent other evidence, to establish a materially adverse employment action." *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 457 (7th Cir. 1994); *see also Herrnreiter*, 315 F.3d at 745 (a "purely subjective preference for one position over another" is insufficient). Since Dunn has not provided any evidence that this short-term reassignment was a significantly negative alteration in the workplace environment within the meaning of Seventh Circuit caselaw, the reassignment cannot constitute an adverse employment action.

Dunn also argues that she was humiliated, threatened, and physically intimidated by Posejpal and Phillips when she took the wrong bus to another location around May 2015. [85] ¶ 21. Posejpal provided Dunn with incomplete instructions for her assignment to drop off and pick up a bus in or around May 2015. [85] ¶ 22. As a result of Posejpal's incorrect instructions, Phillips yelled at Dunn and called her a "liar" and "ignorant." [85] ¶ 22. While this type of language and tone, especially by a supervisor, is harsh and reprehensible, by itself, this incident was not an adverse employment action.[4] "[A] negative evaluation or admonishment by an employer does not rise to the level of an adverse employment act." *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 731 (7th Cir. 2004). "There must be some tangible job consequence accompanying the reprimand to rise to the level of a material adverse employment action; otherwise every reprimand or attempt to counsel an employee could form the basis of a federal suit." *Id.*

Finally, Dunn points to several other incidents: her coworker David Miller yelled that Dunn took his bus, [85] ¶ 44, Dunn's coworker LaDonna Douglas called Dun "b*****s" for no reason, [85] ¶ 46, and manager Corrie Chatman once jumped at Dunn [85] ¶ 45. Dunn also testified that Posejpal would disrupt her prayers in the lunchroom. According to Dunn, there was at least one incident of Posejpal banging on the glass and at least one incident of him kicking garbage cans during her prayers. [85] ¶ 39; [87] ¶ 40. Again, while this type of behavior and language is rude and reprehensible, particularly to the extent done by a supervisor, by themselves, none of these incidents qualifies as an adverse employment action as described by Seventh Circuit caselaw. None of them significantly altered the terms and conditions of Dunn's job. *See Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) ("General hostility and comments do not qualify as actionable adverse employment actions unless the hostility was severe and pervasive."); *Malekpour v. Chao*, 682 F. App'x 471, 474 (7th Cir. 2017) (isolated incidents are not actionable unless they are "extremely serious" or unless they "amount to discriminatory changes in the terms and conditions of employment") (quotations omitted).

---

[4] The court addresses below Dunn's separate argument that this incident, along with others, contributed to a hostile work environment.

### B.    Pretext

Even if Dunn had established a prima facie case of discrimination, CTA's nondiscriminatory rationales shift the burden back to Dunn to present evidence that the stated reason was pretextual.  Dunn has not done so here.

Under *McDonnell Douglas*, a prima facie showing would shift the burden to CTA to produce evidence of a legitimate, nondiscriminatory reason for the reassignment.  *See Barnes v. Bd. of Trustees of Univ. of Illinois,* 946 F.3d 384, 389 (7th Cir. 2020).  CTA points to two nondiscriminatory rationales.  First, in his affidavit, Posejpal stated that his decision to assign the duties to Stack was based in part on Stack's additional experience.  [85] ¶ 62.  Second, Naegele testified that Dunn had difficulties with scheduling.  [85] ¶ 31.  In light of CTA's proffered nondiscriminatory rationales for the reassignment, the burden shifts back to Dunn to show these reasons were pretextual.  *Barnes*, 946 F.3d at 389 ("Because the prima facie and pretext inquiry often overlap, if a defendant offers a nondiscriminatory reason for its actions, we can proceed directly to the pretext inquiry.").

To show pretext, Dunn "must present evidence suggesting that the employer is dissembling." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011).  The Seventh Circuit has "repeatedly emphasized that when assessing a plaintiff's claim that an employer's explanation is pretextual, we do not second-guess an employer's facially legitimate business decisions.  An employer's reasons for firing an employee can be foolish or trivial or even baseless, as long as they are honestly believed." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 564 (7th Cir. 2016) (quotations omitted); *see also Naik v. Boehringer Ingelheim Pharm., Inc.*, 627 F.3d 596, 601 (7th Cir. 2010) (quotations omitted) ("It is not the court's concern that an employer may be wrong about its employee's performance, or may be too hard on its employee.  Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie.") (quoting *Ineichen v. Ameritech*, 410 F.3d 956, 961 (7th Cir. 2005)).

Dunn denied having difficulties and testified that she did well during training.  [87] ¶ 31.  CTA argues that this testimony is self-serving.  "[T]he term 'self-serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment." *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) (noting that "[d]eposition testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving").  Nonetheless, Naegele's testimony about CTA's nondiscriminatory rationale is unrebutted, since Dunn's contrary testimony goes to the "validity or reasonableness" of CTA's explanation, rather than its "honesty." *Id.* at 968.  Simply put, there is no evidence in the record tending to show the CTA's explanation for the scheduling duty reassignment was a "lie." *Naik*, 627 F.3d at 601.

In sum, Dunn has not presented sufficient evidence under the *McDonnell Douglas* burden-shifting framework for the discrimination claims to survive summary judgment. Moreover, considered as a whole, the evidence would not permit a reasonable factfinder to conclude that Dunn's race or sex caused an adverse employment action. *Abrego*, 907 F.3d at 1012.

## IV.    Hostile Work Environment

Dunn also argues that taken together, various workplace incidents had the effect of subjecting her to a hostile work environment, which is a form of discrimination under Title VII. *See Gates v. Bd. of Educ. of the City of Chicago*, 916 F.3d 631, 636 (7th Cir. 2019); *Abrego*, 907 F.3d at 1012. "To prove that an employment environment was actionably hostile, a plaintiff must show that (1) he was subject to unwelcome harassment; (2) the harassment was based on race (or another protected category); (3) the harassment was severe or pervasive to a degree that altered the conditions of employment and created a hostile or abusive work environment; and (4) there is a basis for employer liability." *Gates*, 916 F.3d at 636 (quotations omitted). Relevant facts for this inquiry include "the severity of the alleged conduct, its frequency, whether it [wa]s physically threatening or humiliating (or merely offensive), and whether it unreasonably interfere[d] with the employee's work performance." *Id.* (quotations omitted). To survive summary judgment, Dunn must provide sufficient evidence to allow a reasonable factfinder to conclude that the alleged conduct "was severe or pervasive enough to constitute a hostile work environment." *Id.* (quotations omitted).

To reiterate, Dunn points to several incidents with CTA managers (Chatman, Posejpal, and Phillips) and two separate incidents with her coworkers (Miller and Douglas). First, Posejpal provided Dunn with incomplete instructions for her assignment to drop off and pick up a bus in or around May of 2015. [85] ¶ 21. As a result of Posejpal's incorrect instructions, Phillips yelled at her and called her a "liar" and "ignorant." [85] ¶ 22. Additionally, Dunn testified that Posejpal disrupted her prayers in the lunchroom between April 30 and June of 2015. [87] ¶ 40. According to Dunn, there was at least one incident of Posejpal banging on the glass and at least one incident of him kicking garbage cans. [85-2] at 45–46. As a result, Dunn started eating lunch in the locker room. [85-2] at 46. Separately, manager Corrie Chatman once jumped at her, [85] ¶ 45, her coworker David Miller yelled at her that she took his bus, [85] ¶ 44, and her coworker LaDonna Douglas called her "b*****s" for no reason, [85] ¶ 46.

Dunn has not provided evidence to create a genuine issue of material fact regarding the second element—that these incidents were based on her race or sex. The Seventh Circuit has explained that "[a]lthough a connection between the harassment and the plaintiff's protected class need not be explicit, 'there must be *some* connection . . . .'" *Cole v. Bd. of Trustees of N. Illinois Univ.*, 838 F.3d 888, 896 (7th Cir. 2016) (quoting *Zayas v. Rockford Memorial Hospital*, 740 F.3d 1154, 1159

(7th Cir. 2014)) (emphasis in original). Here, the record does not support a reasonable inference that these incidents were connected to her race or sex.

In the section of her response brief addressing causation, Dunn cites the incident involving Posejpal and Phillips. [89] at 15. During this incident, Phillips yelled at Dunn, beat on the table, called her a "liar," and repeatedly stated "if you are ignorant" while reading from the CTA rule book. [85] ¶ 22. Dunn's argument rests on her belief that the incident was racially motivated, and that being called "ignorant" was racial in nature. [85] ¶¶ 23, 24; [85-2] at 71. However, Dunn does not point to any facts in the record connecting this incident to her race apart from her personal belief. Dunn acknowledges that Posejpal never made any comments about her race. [85] ¶ 23. While again, "a connection between the harassment and the plaintiff's protected class need not be explicit," *Cole*, 838 F.3d at 896, and again, this type of language and tone, especially by a supervisor, is harsh and reprehensible, Dunn has not presented enough evidence to survive summary judgment under Seventh Circuit caselaw, *see id.* at 897 ("Calling [a group of student workers] 'worthless' may have been reprehensible but without more did not amount to race discrimination solely because they were African–American."); *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713–14 (7th Cir. 2004) (affirming grant of summary judgment where "no reasonable jury could find that" supervisor's remark "was racial in character or purpose" because, although the "comment arguably ha[d] a racial character," it was clear in "context" that it was not).

In addition, as to the third element, a reasonable jury could not find that these incidents, individually or collectively, were either severe or pervasive to a degree that created a hostile work environment. "Ultimately, to satisfy the 'severe or pervasive' prong, the plaintiff must show that the work environment was both subjectively and objectively offensive." *Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 566 (7th Cir. 2004). A "severe episode" that occurs "as rarely as once" and a "relentless pattern of lesser harassment" both may violate Title VII. *Cerros v. Steel Techs., Inc.*, 398 F.3d 944, 951 (7th Cir. 2005). As noted above, the incident where Phillips yelled at Dunn involved language and tone, especially by a supervisor, that was harsh and reprehensible. Nonetheless, that incident did not rise to the level of a hostile work environment within the meaning of Seventh Circuit caselaw, either alone or in combination with the other incidents. *Abrego*, 907 F.3d at 1015 ("short tempered," "hostile," unfairly critical, and disrespectful supervisors, and being "subjected to excessive monitoring" were not "objectively offensive, severe, or pervasive" conditions). In addition, while "an unambiguously racial epithet falls on the 'more severe' end of the spectrum," *Cerros*, 398 F.3d at 950 (citations omitted), here none of the incidents involved that. Finally, Dunn also argues that several incidents involved physical intimidation. As to the incident where Phillips yelled at Dunn, Dunn testified that Phillips is a "big built man," who stood "over [her]" while yelling, [85-2] at 35, and further testified that she felt humiliated and threatened, [85-2] at 71. She also cites the fact that Chatman jumped out at her but does not provide any details suggesting this was an instance of physical intimidation.

However, Dunn has not put forward evidence showing that these incidents met "the objective standard for an abusive environment." *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016); *see also Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005) (incidents where co-workers "cursed" and "yelled" at plaintiff "fall short of an objectively offensive work environment"); *Marshall v. NYC Bd. of Elections*, 322 F. App'x 17, 18–19 (2d Cir. 2009) (plaintiff's "allegations that her supervisor displayed a violent temper, stood over her with clenched fists on several occasions, disparaged her educational background, and engaged in crass behavior" was insufficient to establish "conduct . . . sufficiently pervasive to alter the conditions of her employment"). Taking all the incidents as a whole, Dunn's allegations are serious, and the behavior and language involved are harsh, rude, and reprehensible, particularly to the extent done by supervisors. However, the totality of the circumstances does not rise to the level of a hostile work environment as described by Seventh Circuit caselaw.

In sum, Dunn has not pointed to evidence creating a genuine issue of material fact that she was subjected to discrimination on the basis of race or sex in violation of Title VII, either in the form of a hostile work environment or otherwise. CTA's motion for summary judgment as to Dunn's race and gender discrimination claims (Counts 1 and 3) is granted.

## V. Retaliation

Finally, the court addresses Dunn's retaliation claims. "To survive summary judgment on a Title VII retaliation claim, an employee must produce enough evidence for a reasonable jury to conclude that (1) she engaged in a statutorily protected activity; (2) the [defendant] took a materially adverse action against her; and (3) there existed a but-for causal connection between the two." *Abrego*, 907 F.3d at 1014 (quotations omitted) (alteration in original).

First, CTA argues that Dunn did not engage in a protected activity. In response, Dunn points out that she filed a claim with CTA's internal EEO unit. CTA argues Dunn has not shown that this complaint involved membership in a protected class. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) (complaining in general terms of discrimination or harassment without indicating a connection to a protected class is insufficient to constitute protected activity for purposes of Title VII retaliation). But the record makes clear that Dunn's 2015 report to manager and subsequent internal EEO claim involved allegations of "racial discrimination." [85-4] at 115. This is sufficient since a plaintiff must only have "a sincere and reasonable belief that he is opposing an unlawful practice." *Lord*, 839 F.3d at 563. Thus, the first element of Dunn's retaliation claim is satisfied.

Next, CTA argues that Dunn did not suffer an adverse employment action. Dunn relies on many of the same workplace incidents to argue that she suffered

retaliatory adverse actions. [87] ¶ 64. Dunn also points to the following occurrences: she was no longer allowed to swap days with Jones or others, [85] ¶ 64, Michael Stack replaced her in her scheduling duties, [85] ¶ 68, and Posejpal denied her requests for help with her duties, [85] ¶ 69. In arguing that none of these incidents were adverse actions, CTA simply incorporates its arguments regarding Dunn's discrimination claims. The standard for showing an adverse employment action for a retaliation claim is lower than that for a discrimination claim. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 66 (2006). "[A] plaintiff must only show that the employer's action would cause a 'reasonable worker' to be dissuaded from making or supporting a charge of discrimination." *Chaib v. Indiana*, 744 F.3d 974, 986–87 (7th Cir. 2014) (quotations omitted), *overruled on other grounds by Ortiz*, 834 F.3d 760. Even so, it is not clear that any of these instances were adverse actions that could support a retaliation claim.

More importantly, even if there was an adverse action, Dunn cannot show causation. For a retaliation claim, "but-for causation" is required. *Lord*, 839 F.3d at 563. At summary judgment, this is a "straightforward inquiry: Does the record contain sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the discharge?" *Id.* Among other things, circumstantial evidence allowing a jury to infer retaliation may include: "(1) suspicious timing, ambiguous statements of animus or behaviors; (2) evidence that similarly situated employees were treated differently; or (3) a pretextual reason for adverse employment action." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 973 (7th Cir. 2012).

Here, Dunn's sole argument is that the alleged harassment either continued or increased after she complained about the loss of the pick position and filed internal complaints. Dunn notes that Carl Jones testified that Posejpal increased his harassment of Dunn after she filed her EEO claims. [88-5] at 16. Jones grounded his opinion on the fact that while Dunn used to be able to help him with scheduling "a little bit," Posejpal took her "completely off" that duty around the time of Dunn's EEO complaint. [88-5] at 16. When asked whether he had evidence that the harassment increased as a result of Dunn's EEO claims, Jones testified: "It's just my assumption. . . . [the harassment] just continued, picked up where it left off for Ms. Dunn and myself." [88-5] at 16. To the extent Jones's testimony that harassment of Dunn increased after she filed her EEO claims was speculation or unsupported opinion, it is not enough to produce a genuine issue for trial. *See Jordan v. Summers*, 205 F.3d 337, 344 (7th Cir. 2000). And the portion of his testimony based on personal knowledge—that Posejpal fully removed Dunn from scheduling after she filed her claim—relates solely to suspicious timing.

Suspicious timing alone is generally insufficient to show retaliation. *See Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 508 (7th Cir. 2014) ("Under most circumstances, suspicious timing alone does not create a triable issue on causation."). Except for the single event described by Jones, Dunn does not explain

which incidents occurred *after* she filed her report to Naegele or CTA's EEO unit. As to the event described by Jones, suspicious timing may potentially support an inference of retaliation "[w]hen an adverse employment action follows on the close heels of protected expression and the plaintiff can show the person who decided to impose the adverse action knew of the protected conduct." *Lord*, 839 F.3d at 564 (quoting *Culver v. Gorman & Co.*, 416 F.3d 540, 546 (7th Cir. 2005)). Even if Jones's testimony was evidence that Posejpal took an additional action against Dunn shortly after filing her internal EEO claims, Dunn has not shown that Posejpal was aware of the claims when he took action. Because Dunn has not laid out a timeline of events pointing to retaliation, this is not the "rare case where temporal proximity alone creates a triable issue on causation." *Milligan v. Bd. of Trustees of S. Illinois Univ.*, 686 F.3d 378, 390 (7th Cir. 2012).

Drawing all reasonable inferences in Dunn's favor, the record does not create a genuine issue of material fact that any instances of harassment would not have occurred if Dunn had not filed EEO claims. Accordingly, the court grants summary judgment as to the retaliation claims as well (Counts 2, 4, and 6).

## Conclusion

The motion for summary judgment [84] is granted.

Date: September 30, 2021         /s/ Martha M. Pacold

14